IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FIRST AMERICAN SPECIALTY INSURANCE COMPANY,

    Plaintiff,

  v.

CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, CARMAX AUTO SUPERSTORES WEST COAST, INC., and DOES 1 through 30, inclusive,

    Defendants.

/

No. C 16-05951 WHA

**ORDER RE MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this products liability action, defendants move for summary judgment. Plaintiff opposes. For the reasons set forth herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Plaintiff First American Specialty Insurance Company provided insurance for Anthony Santos's home in Fremont, California, and acts as subrogee in this action. It alleges that the insured purchased a 2002 Ford F-150 from defendants Carmax Auto Superstores California, LLC, ("Carmax California") and Carmax Auto Superstores West Coast, Inc. ("Carmax West"), which had a defective speed control deactivation switch ("SCDS"). The SCDS was the subject of a recall because it was known to fail without warning and combust, but Carmax allegedly informed the insured that his car had been thoroughly inspected, and was safe, and failed to inform him of the recall or otherwise fix the defective part. Years later the defective SCDS

caught fire while on insured's property and caused damage to his car, garage, and home. First American paid insured $267,000 to cover the damage (Compl. at 1, 3–4; Dkt. No. 47-1 at 11).

In October 2016, First American sued defendants Ford Motor Company and Carmax to recover the money it paid to the insured. First American has since settled with Ford, and an order deemed the settlement to be in good faith, and dismissed all claims against Ford (Dkt. Nos. 42, 45). The only remaining claim in this suit is a negligence claim against defendants Carmax California and Carmax West. Carmax defendants now bring this motion for summary judgment.

Defendants jointly move for summary judgment on the grounds that (1) the statute of limitations has run on First American's negligence claim, (2) defendants had no duty to warn insured of the recall, and potentially unsafe condition of his car, and (3) even if they did, their failure to warn insured did not cause him harm. Carmax West separately moves for summary judgment on the grounds that it did not sell the vehicle to insured or in any way participate in the sale, and therefore cannot be held liable for any harm.

This order addresses each argument in turn.

**ANALYSIS**

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(a). A dispute is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. Once the moving party has made a threshold showing, the burden shifts to the nonmoving party to prove the existence of a triable issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In this analysis, all reasonable inferences must be drawn in the light most favorable to First American. *See Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1018 (9th Cir. 2010).

1. **CARMAX WEST.**

Carmax West argues that it was not in any way involved in the sale to insured, and therefore cannot be held liable for negligence. Defendants have provided the sales contract

showing that the sale was solely between insured and Carmax California, and declarations establishing that nobody involved in the sale was an employee, officer, director, or managing agent of Carmax West (Dkt. No. 46-1 Exs. 5, 8).

This showing is sufficient to shift the burden to First American to come forth with some evidence that Carmax West can be held liable in this suit. *see Liberty Lobby, Inc.*, 477 U.S. at 248–49. First American has not done so. It does not contest this claim in its opposition and has not provided any evidence that Carmax West was involved in the sale of the vehicle to insured, or should otherwise be liable for any alleged wrongs committed against insured.

Accordingly summary judgment is **GRANTED** as to defendant Carmax West.

### 2. STATUTE OF LIMITATIONS.

Defendants next contend that the statute of limitations has run on First American's claims.

California law imposes a three-year statute of limitations on actions for negligent damage to property. Cal. Code. Civ. P. § 338(b). This statute of limitations applies to a subrogee just as it would apply to a first party plaintiff. *Commercial Union Assur. Co. v. City of San Jose*, 127 Cal. 3d 730, 733 (1982).

Ordinarily, the statute of limitations begins to accrue "when the cause of action is complete with all of its elements." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005) (citations and quotations omitted). There is, however, an exception to this rule. Pursuant to the so-called "discovery rule" the statute of limitations is tolled until the time that a plaintiff discovers the cause of action, or has "reason to at least suspect that a type of wrongdoing has injured [him]." *Id.* at 807. "[P]laintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." *Ibid*.

Defendants argue that the statute of limitations began to accrue the day insured purchased his car on February 13, 2006, because at that time the defective part was already in the car and insured could have discovered the existence of the defect by, for example, performing a Google search (Br. at 11–12). Defendants further argue that even if he did not

3

take it upon himself to perform such a search, he was given a notice at the time of purchase, which provided the manufacturer's contact information, and instructed him to register as the new owner so he could receive any notices from the manufacturer. Had he contacted the manufacturer, defendants argue, he would have been informed of the recall. Therefore, defendants contend that the statute ran on February 13, 2009, three years after the purchase and almost eight years before First American filed this action (*ibid.*).

Defendants' argument, however, distorts the discovery rule. Under that rule, the question is not whether a plaintiff *could have* become aware of wrongdoing, but rather whether he *reasonably should have* become aware of wrongdoing. *Fox*, 35 Cal. 4th at 807. A plaintiff's duty to investigate is only triggered once a plaintiff "learns of [the potential for danger]" or an actual injury, and "the law only requires an investigation when a plaintiff has reason to investigate." *Nelson v. Indevus Pharm., Inc.*, 142 Cal. App. 4th 1202, 1207 (2006). Moreover, because the rule focuses on the plaintiff's decision making process and state of mind, it requires a fact-based inquiry not usually suited to determination at summary judgment. *Romano v. Rockwell Int'l, Inc.*, 14 Cal. 4th 479, 487 (1996); *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 (1988).

Here, the insured claims that the first time he suspected there was a problem with his car was when it burst into flames. Before that, it apparently ran smoothly and had no issues that would have alerted him to the alleged defectiveness of the SCDS. The insured had no duty to go in search of some non-obvious problem with his vehicle. *See Nelson*, 142 Cal. App. 4th at 1207.

Nor is defendants' contention that the insured was given a manufacturer's notification letter recommending that he register as the new owner dispositive. *First*, the insured disputes that he was ever given a manufacturer's notification letter (Dkt. No. 47-1 at 18 ¶¶ 4–5 (Santos' declaration)). This, in itself, raises a genuine dispute of fact that cannot be resolved at summary judgment. *Second*, even if he had been given the notice as one of a number of documents he was handed at the time of purchase, it is not clear that a failure to act on that notice

recommending he contact the manufacturer was unreasonable. This too is a factual question best resolved by a fact finder.

First American has raised a genuine dispute of material fact as to whether the insured should have reasonably been aware of the defective part at the time of purchase or shortly thereafter. Accordingly, defendants have not shown that summary judgment is appropriate on the basis of the statute of limitations.

### 3. NEGLIGENCE.

To succeed in a negligence claim, First American must show that defendants owed a duty to insured, breached that duty, and that its breach caused harm to First American. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pac. Bell*, 225 Cal. App. 3d 1557 (1990)).

Defendants argue that they are entitled to summary judgment because (1) they owed no duty to the insured to inform him of Ford's recall on the SCDS, and (2) even if they had warned the insured of the defective part, he would not have relied upon that warning, and therefore cannot show causation.

#### A. Duty.

Defendants' no-duty argument starts from a mistaken premise. They contend that because the federal Motor Vehicle Safety law — a law under which First American has not asserted any claims — imposes an affirmative duty on car manufacturers to warn consumers of a defect, resellers such as Carmax are automatically exempt from any such duty under any state law (Br. at 16–17; *see* 49 U.S.C. 30118). This is a logical fallacy. The mere fact that federal motor vehicle laws expressly impose a duty on car manufacturers to disclose defects does not therefore relieve used car dealers from a state-law duty to disclose defects to their customers. Defendants do not cite a single legal authority that corroborates their theory that the legislature, by not imposing an express statutory duty on car resellers, has precluded even common-law negligence claims against resellers. Were First American claiming violations of federal Motor Vehicle Safety law, we would have a different case. First American, however, asserts only common-law negligence claims here.

5

Defendants further contend that they owed no duty to the insured because the California legislature considered, but ultimately failed to pass a bill that would have required used car dealerships to obtain a "recall database report" prior to advertising a vehicle as "certified" and to prohibit labeling a vehicle as "certified" if it was "subject to an unremedied manufacturer's recall." Proposed Senate Amendment to AB 287 (2015-2016 Reg. Sess.). This is a fantastic proposition, for it would mean that every time a legislator proposed a statutory duty, its failure to pass would translate to a statutory prohibition of any such duty under the common law (or, for that matter, under any statute already on the books). The proposed amendment merely shows that the someone in the legislature recognized a problem with used car dealers "certifying" vehicles that were subject to recall, but the legislature left the problem to the common law.

Neither of defendants' supposed "authorities" is of any help to them, and they certainly do not show that defendants had no duty as a matter of law to inform the insured of a recall. Defendants have not carried their burden, and therefore are not entitled to summary judgment on this ground.

### *(1)    Negligent Misrepresentation Theory.*

In its opposition, First American also puts forth another theory of liability not addressed in defendants' motion. In addition to arguing that defendants failed to show they had no duty to the insured under a conventional negligence claim, it argues that defendants *negligently misrepresented* the vehicle's condition to the insured and have failed to show that this theory does not state a viable legal claim.[1]

A negligent misrepresentation claim carries different elements from a standard negligence claim. To prove negligent misrepresentation, a plaintiff must show that the defendant (1) asserted a material fact, (2) which was untrue, (3) without a reasonable grounds for believing it to be true, (4) with the intent that plaintiff would rely upon the assertion, (5) that

---

[1] First American's complaint labels its sole claim against Carmax Defendants as a claim for negligence. In addition to alleging a negligent failure to warn of or fix the defective part (Dkt. No. 1 ¶ 11), however, it also alleges that defendants "negligently, carelessly, recklessly and falsely represented, both implicitly and explicitly, that the 2002 Ford F-150 had been thoroughly inspected and was safe and free from defect" (*id.* ¶ 12).

6

the plaintiff justifiably relied upon the representation, and (6) as a result was harmed. *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 845 (2007), *as modified* (Dec. 26, 2007).

First American argues that defendants owed the insured a duty not to imply that defendants have undertaken "a complete investigation" of the vehicle by stating "Certified Quality Inspection assures your used vehicle will be in top condition when you buy it" when, in fact, they had not repaired or replaced the recalled part (Opp. at 7; Dkt. No. 47-1 at 11, 13).[2]

Defendants, in turn, raise new arguments for the first time in reply, in an effort to show that First American cannot support its negligent misrepresentation claim. They argue that First American has failed to show that the defendants had "no reasonable ground for believing [their statements regarding the car's quality] to be true" as is required to assert a negligent misrepresentation claim. *See OCM*, 157 Cal. Ap. 4th at 845. Specifically, they argue that Carmax *did* perform a thorough inspection on the vehicle, that there is no evidence showing that Carmax California knew of the recall, and therefore, First American cannot show that they did not have reasonable grounds for believing that the vehicle was safe and in top condition when they sold it to the insured (Reply at 7–8; Dkt. No. 46-1 Exh. 8).

This, however, is a question of fact — *i.e.* was it reasonable for Carmax, a used car dealer, to represent that a car was in top condition (or that its inspection of the vehicle was thorough) without having run a routine check to determine if there were any recalls on the vehicle? Accordingly, this claim is not suitable for resolution on a motion for summary judgment.

---

[2] First American does not provide a citation to the alleged half-truths it quotes in its opposition. An examination of the record shows that this statement comes from an exhibit presented to the insured at his deposition, and that the relevant language was read into the record (*see* Dkt. No. 47-1 at 13). Defendants object to First American's use of the insured's deposition as substantive evidence in opposition to summary judgment, citing Federal Rule of Civil Procedure 32(a)(3), which allows a party to use the deposition of an adversary. Rule 32, however, does not prohibit a party from using a deposition of a non-adverse party to support a summary judgment motion. *See Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 199 (E.D.N.Y. 2007). Therefore, defendants' objection is **OVERRULED**.

7

### B. Causation.

Defendants next argue that the insured's deposition testimony proves that he would not have taken any action to fix the recalled part even if he had known about it (Br. at 22). Therefore, defendants argue, First American cannot claim a failure to inform the insured of the recall caused him harm.

True, the insured admitted at deposition that he had never had a recall performed on cars he previously owned, even upon receiving notice of a recall (Dkt. No. 46-1 at 19–20). His deposition testimony, however, is not dispositive of the issue here for three reasons. *First*, the insured's past conduct cannot be treated as perfectly predicting how he would have reacted in 2016 had he been given notice of the recall.

*Second,* the insured's admission regarding past recalls was qualified. He stated that he had not performed past recalls because "somebody would want to buy my car. So I would tell them, oh, here's the recall notice . . . Throughout my life I've always had cars, you know, three or four years and then I sell it" (*id.* at 20). Unlike the insured's past purchase and sale history, it is undisputed that he held on to the subject vehicle for ten years before the fire. Given this distinction, his past conduct regarding recalls does not eliminate factual disputes as to what course of action he may have taken had he been informed of *this* recall.

*Third*, had Carmax informed him of the recall, it is possible that he would not have purchased the vehicle in the first place. In that scenario, he would not have been presented with the task of performing the recall.

### CONCLUSION

For the foregoing reasons, Carmax West's motion for summary judgment is **GRANTED**. Carmax California's motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 10, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8